```
          IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MARYLAND

TIMOTHY J. HUDAK, et ux.         *

        Plaintiffs                *

           vs.                    *    CIVIL ACTION NO. MJG-11-1271

THE UNITED STATES OF AMERICA      *

                                  *
        Defendant
*       *       *       *       *       *       *       *       *
```

<u>MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT</u>

The Court has before it the United States' Motion for Summary Judgment Against Timothy Hudak [Document 100] and the materials submitted relating thereto. The Court has held a hearing and has had the benefit of the arguments of counsel.

I.  <u>SUMMARY INTRODUCTION</u>

At all times relevant hereto, Timothy Hudak ("Hudak") was the owner and president of related companies, referred to as "the Hudak Companies". The Hudak Companies failed to comply with their withholding and employment tax obligations for the quarterly tax periods ending on the following dates: 12/31/07, 9/30/08, 12/31/08, 3/31/09, 6/30/09, 9/30/09, 12/31/09, 3/31/10/, and 12/31/10. In due course, the Internal Revenue Service made an assessment pursuant to § 6672 of the Internal

Revenue Code[1] against Hudak.[2] According to the Government, as of May 27, 2013, the § 6672 trust fund recovery penalties assessed against Hudak totaled approximately $2,338,248.91, which includes interest and costs that continue to accrue. Hudak made partial payment of the assessment[3] against him, filed a claim for refund, and then brought the instant lawsuit. The Government has duly counterclaimed for the unpaid balance of the assessment.

By the instant motion, the Government seeks summary judgment against Hudak, rendering him liable for the amount due on the assessment with interest and costs.

II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the pleadings and supporting documents show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The well-established principles pertinent to summary judgment motions can be distilled to a simple statement: The court may look at the evidence presented in regard to a motion

---

[1] All Section references herein are to Title 26 of the United States Code, the Internal Revenue Code.
[2] And Dwight C. Mules, the chief financial officer of the Hudak Companies. While Mules is a party to this lawsuit, he is not a party to the instant motion.
[3] For a detailed procedural background see the Memorandum and Order [Document 25].

for summary judgment through the non-movant's rose-colored glasses, but must view it realistically. After so doing, the essential question is whether a reasonable fact finder could return a verdict for the non-movant or whether the movant would, at trial, be entitled to judgment as a matter of law. See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991).

When evaluating a motion for summary judgment, the court must bear in mind that the "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex, 477 U.S. at 327 (quoting Rule 1 of the Federal Rules of Civil Procedure).

III. DISCUSSION

Section 6672 provides, in pertinent part:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, . . . shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a).

Thus, for Hudak to be liable pursuant to § 6672 he must, as

3

to each period for which liability is asserted[4], have been a "responsible person" as well as "willfully" failed to collect and pay over the taxes at issue.

In the summary judgment context, Hudak as the non-moving party, is entitled to have "the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, all internal conflicts in it resolved favorably to him, the most favorable of possible alternative inferences from it drawn in his behalf; and finally, to be given the benefit of all favorable legal theories invoked by the evidence so considered." Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). Therefore, despite the Government's vigorous denial of Hudak's assertions, for purposes of the instant discussion, the Court must accept the version of the facts most favorable to Hudak. On this basis, the Court cannot case aside the fact that a reasonable jury could find that:

  1 -  Prior to February 17, 2010, Hudak had reasonably delegated to Mules – the chief financial officer - the responsibility for compliance with employment tax obligations;

  2 -  Mules, and not Hudak, made decisions regarding whether

---

[4] As discussed herein, under established Fourth Circuit precedent, Hudak would have § 6672 liability if he was a responsible person for periods prior to February 17, 2010, first learned of the tax deficiency on that date and then failed to use unencumbered funds available to the Hudak Companies to pay the back taxes. See Erwin v. United States, 591 F.3d 313, 326 (4th Cir. 2010).

4

to pay the Internal Revenue Service or other creditors
with available funds and Hudak merely signed checks
after the decision to pay (and in what amount) was
made by Mules;

3 - Mules misled Hudak into believing that the Hudak
Companies were compliant with their employment tax
obligations;

4 - Hudak reasonably, not recklessly, relied upon Mules'
representations;

5 - On February 17, 2010, Hudak became aware that the
Hudak Companies were not, and had not been, compliant
with their employment tax obligations; and

6 - Thereafter, Hudak commenced to seek to have the Hudak
Companies comply with their employment tax obligations
on a going forward basis.

A.  Responsible Person Status

The United States Court of Appeals for the Fourth Circuit has stated that

> To determine who within a company is a
> "responsible person" under § 6672, we
> undertake a pragmatic, substance-over-form
> inquiry into whether an officer or employee
> so participate[d] in decisions concerning
> payment of creditors and disbursement of
> funds that he effectively had the authority-
> and hence a duty-to ensure payment of the
> corporation's payroll taxes. . . . Stated
> differently, the crucial inquiry is whether
> the person had the "effective power" to pay
> the taxes-that is, whether he had the actual
> authority or ability, in view of his status
> within the corporation, to pay the taxes
> owed.

Plett v. United States, 185 F.3d 216, 219 (4th Cir. 1999)
(internal citations and quotations omitted).

5

The Fourth Circuit has developed a "non-exhaustive list of factors to consider in determining whether 'the substance of the circumstances' establishes responsible person status under § 6672." Erwin v. United States, 591 F.3d 313, 320 (4th Cir. 2010). Those factors include whether the person at issue:

> (1) served as an officer or director of the company;
>
> (2) controlled the company's payroll;
>
> (3) determined which creditors to pay and when to pay them;
>
> (4) participated in the corporation's day-to-day management;
>
> (5) had the ability to hire and fire employees; and
>
> (6) possessed the power to write checks.

Id. No one factor is determinative; the court is to assess the totality of the circumstances. Id.

While the Government may well prevail at trial, the evidence can be viewed as favoring Hudak as to at least one – if not more – of these factors. For example, on Hudak's version of the "facts", it was Mules and not he who determined which creditors to pay, when to pay them, and the amount they were to be paid. On Hudak's version, any check signing he did was perfunctory. Of course, the jury will make the ultimate determination of whether to accept Hudak's version of the facts.

6

The Government asserts that as the president and sole owner of the Hudak Companies, Hudak had the authority to pay the taxes owed and cannot escape responsible person status by claiming to have delegated that authority to Mules. However, that status does not necessarily make him a responsible person for § 6672 purposes. "[A] party cannot be presumed to be a responsible person merely from titular authority . . . The focus must instead be on substance rather than form." O'Connor v. United States, 956 F.2d 48, 51 (4th Cir. 1992) (reversing district court grant of summary judgment to government in § 6672 case where O'Connor, vice president and half owner of company, claimed he did not perform officer-related duties and did not exercise authority that "his status as equity holder and vice president may have bestowed upon him"). Although a person cannot avoid "responsible person status" by delegating much of his or her authority to others, the practical realities of the substance of a business arrangement cannot be ignored. See Erwin, 591 F.3d at 322-23 (explaining delegation of authority would not relieve Erwin of responsible person status but assessing evidence of how Erwin actually exercised his authority within the company).[5] While Hudak does not claim to be a mere passive investor in the Hudak Companies, the evidence and

---

[5] Though in Erwin, the delegation of authority with respect to financial matters appeared to include hiring an independent accountant. See Erwin, 591 F.3d at 318.

7

inferences reasonably drawn from the record present genuine issues of material fact preventing summary judgment establishing Hudak's responsible person status for the entire period at issue.[6]

B. Willfulness

In the § 6672 context, the word "willful" means that the responsible person had "knowledge of nonpayment or reckless disregard of whether the payments were being made." Turpin v. United States, 970 F.2d 1344, 1347 (4th Cir. 1992) (internal quotation marks omitted). A responsible person's intentional preference of other creditors over the Internal Revenue Service will establish willfulness. See United States v. Pomponio, 635 F.2d 293, 298 n.5 (4th Cir. 1980). Such an intentional preference will exist if the responsible person "[knew] of or recklessly disregard[ed] the existence of an unpaid deficiency." Turpin, 970 F.2d at 1347.

The Government contends that Hudak had actual knowledge of, or recklessly disregarded, the Hudak Companies' employment tax noncompliance at all relevant times. If Hudak is unable to prove that the Government is wrong in this assertion, his

---

[6] Government counsel declined, although invited to do so at argument, to seek partial summary judgment establishing responsible officer status for the period after February 17, 2010.

willfulness will be established.

Hudak admits to having actual knowledge of the Hudak Companies' prior employment tax noncompliance as of February 17, 2010. As the Fourth Circuit has stated:

> . . . [F]ollowing the lead of every other circuit to consider the question, we adopt the rule that when a responsible person learns that withholding taxes have gone unpaid in past quarters for which he was responsible, he has a duty to use all current and future unencumbered funds available to **the** corporation to pay those back taxes.

Erwin, 591 F.3d at 326.

Therefore, if Hudak is found to have been a responsible person for a period prior to February 17, 2010, he would be required thereafter to use all unencumbered funds available to the Hudak Companies to reduce the Hudak Companies' withholding tax liabilities from the prior periods.

Hudak bears the burden of proving that no unencumbered funds were available to satisfy the delinquency, as this inquiry is part of the larger inquiry into the willfulness question. See United States v. Kim, 111 F.3d 1351, 1359 (7th Cir. 1997). While the Fourth Circuit has yet to formally adopt a definition for "encumbered funds", other Circuits have considered funds encumbered, for purposes of § 6672 if "'the taxpayer is legally obligated to use the funds for a purpose other than satisfying the preexisting employment tax liability and if that legal

obligation is superior to the interest of the IRS in the funds.'"[7]  Id. (quoting Honey v. United States, 963 F.2d 1083, 1090 (8th Cir. 1992); Conway v. United States, 647 F.3d 228, 237 (5th Cir. 2011); Huizinga v. United States, 68 F.3d 139, 145 (6th Cir. 1995).

Hudak contends, among other things, that the funds in question were encumbered by virtue of a Maryland statute imposing a trust on funds obtained for certain purposes.[8]  See Huizinga, 68 F.3d at 142 (finding Michigan Builders Trust Fund Act encumbered use of available funds for purposes of "willfulness" inquiry).  However, the legal and factual issues surrounding this matter were not adequately presented to enable a definitive decision on the instant summary judgment motion.

---

[7]  While not explicitly adopting the definition of "encumbered funds" in Kim and Honey, the Fourth Circuit has signaled approval of this definition.  See Erwin, 591 F.3d at 326 (relying on Honey to conclude "willfulness" where the undisputed evidence showed Erwin had paid rent and food vendors instead of paying the IRS and there was no contention that any "creditor held a security interest in these funds superior to the IRS's interest").

[8]  That is Md. Code Ann., Real Prop. § 9-201, which provides in pertinent part that any "moneys paid . . . by the owner or contractor to a subcontractor for work done or materials furnished, or both, for or about a building by any subcontractor, shall be held in trust by the contractor or subcontractor, as trustee, for those subcontractors who did work or furnished materials, or both, or about the building, for purposes of paying those subcontractors."  See Selby v. Williams Constr. Servs., 948 A.2d 132, 137 (Md. Ct. Spec. App. 2008) (explaining purpose of Maryland trust statute is to protect subcontractors from dishonest practices by general contractors and other subcontractors).

These matters will be addressed, in due course, at trial.

The "bottom line" is that the Government is not entitled to summary judgment with regard to Hudak's willfulness.

C. <u>The "Complete Defense"</u>

Hudak asserts that he has a "complete defense" to any liability for the § 6672 trust fund assessment. The specifics of this "complete defense" have yet to be clarified.

As best the Court can now understand it, the "complete defense" is based upon the contention that the Hudak Companies' failure to comply with their withholding tax obligations was caused by the Government. The factual basis – which the Government denies can be established – is that the Hudak Companies were subcontractors on a Government contract, the Government wrongfully delayed making certain payments to the general contractor, causing delays in payments to the Hudak Companies, which in turn caused financial distress to the Hudak Companies that resulted in the tax noncompliance.

Hudak has not presented, to date, authority or argument that the Court finds persuasive supporting the "complete defense." Hudak refers to the district court decision in <u>Iraci v. Scanlon</u>, 202 F. Supp. 42 (E.D.N.Y. 1961), <u>adhered to on</u>

11

reargument, 61-C-187, 1962 WL 13062 (E.D.N.Y. Jan. 30, 1962). The Court seriously questions whether the Iraci district court decision, particularly in light of the procedural issues[9] and "history" of the case[10], is at all pertinent. In any event, even if the district court in Iraci can be said to have decided that there could be a "complete defense" as articulated by Hudak, the Court finds the decision unpersuasive.

The Court will not foreclose Hudak from seeking to present, and preserve for appeal if necessary, his "complete defense" theory. Inasmuch as the Government contends that Hudak cannot establish the factual basis on which the theory depends, Hudak must obtain a verdict establishing the necessary facts. Thus, Hudak must present an appropriate verdict question with any necessary instructions relating thereto.

It appears at argument, that Hudak's counsel, may have been seeking a verdict question such as:

> Has Timothy Hudak proven, by a preponderance of the evidence, that, without any fault on the part of the Grunley Company or the Hudak

---

[9] The decision on re-argument was based upon the view that the assessment was not subject to the prohibition against tax injunctions because the Government was seeking to hold the plaintiff liable for the tax of another. This intriguing concept does not appear to have taken "traction" in the last fifty years.

[10] See Botta v. Scanlon, 288 F.2d 504 (2d Cir. 1961).

12

> Companies, the Government wrongfully delayed
> paying Grunley on change orders, causing
> Grunley to delay paying the Hudak Companies,
> which delay then caused the Hudak Companies
> to be unable to meet their employment tax
> and withholding obligations for any of the
> taxable periods at issue?

The Court is not suggesting that the foregoing question is appropriate or even that there can be any appropriate question to preserve the "complete defense" theory. However, the Court will give Hudak the opportunity to provide a verdict question with instructions so as to seek to preserve the "complete defense" theory for appellate review. If Hudak makes such a submission, the Court will consider whether to include the question in the verdict sheet if the evidence at trial is adequate to warrant the question.

IV. CONCLUSION

For the foregoing reasons,

1.  The United States' Motion for Summary Judgment Against Timothy Hudak [Document 100] is DENIED.

2.  The case shall proceed to jury trial.

SO ORDERED on Monday, July 15, 2013.

/s/<br>
Marvin J. Garbis<br>
United States District Judge